It was the duty of the plaintiff to know something about her bank account; to have her husband report to her what he was doing with this large amount of her property. She could not, without investigation and care, permit her husband to proceed with this property, violate the law, oppress the public by usurious contracts, giving her the benefit of it, and she neglecting and refusing to know anything about it; "leaving all matters to him," as she says, "giving him entire control," "paying no attention to the details of the business." In so doing, she infringes another principle of the law of agency, which requires that "a principal should within a reasonable time examine his agent's report, and disavow such acts as are unauthorized; and, if he fails to do so, his silence will be deemed good evidence of a ratification." 1 Am. & Eng. Enc. Law, 1206, and cases cited in note 3. The facts of this case clearly take it out of the line of cases cited by the respondent's counsel. In none of those cases were such broad powers given to the agent as in this. The husband here was in fact the principal. The wife, so to speak, was absorbed in him, and he proceeded as her alter ego. A case resembling this in many respects is Braine v. Rosswog, 13 App. Div. 249, 42 N. Y. Supp. 1098, which may be perused with profit in the disposition of this case. We have reached the conclusion that this judgment cannot stand. The trial court sought to relieve the loss that would come to the plaintiff or her husband (who had loaned the money invested) by treating the bonus as a payment, and giving judgment for the residue.

The judgment should be reversed, and a new trial ordered, with costs to abide the event.

(25 App. Div. 315.)

FRANCE v. ROME, W. & O. R. CO.

(Supreme Court, Appellate Division, Fourth Department. February 6, 1898.)

INJURY TO EMPLOYE—DEFECTIVE BRAKE—PROXIMATE CAUSE.

A box car, with a defective brake, was left on a side track by defendant railroad company's employés, and, a high wind springing up, was blown down on the main track of the road, where it remained until it was struck by an excursion train, which was derailed, causing the death, among others, of plaintiff's intestate, who was a fireman in defendant's employ, upon the second engine used in drawing the excursion train. *Held*, that the defective brake, and not the high wind, was the proximate cause of the accident, and a verdict for plaintiff should be sustained.

Appeal from trial term, Oswego county.

Action by Mary E. France, as administratrix of the estate of Lucius J. France, deceased, against the Rome, Watertown & Ogdensburg Railroad Company. From a judgment entered on a verdict for $5,000, for plaintiff, and an order denying a new trial, and an order granting an extra allowance, defendant appeals. Judgment and orders affirmed.

Plaintiff's intestate was killed at the accident near Carlyon station, in Orleans county, on the 27th of July, 1883. He was then a fireman in the employ of the defendant, and was upon the second engine used in drawing an excursion train from Niagara Falls to the Thousand Islands. The excursion train encountered a box freight car which had been left upon the siding, and which,

by the wind, had been blown from the siding down onto the main track, and caused the collision which derailed the excursion train, causing the death of some 20 people and the injury of some 45 others.    Plaintiff's complaint alleges that the defendant "negligently and carelessly omitted having and keeping, for the purposes aforesaid, a good and sufficient railroad, or good and sufficient switches or side tracks, turnouts, or depot, or good or sufficient railroad cars or locomotive engines, or other good or sufficient paraphernalia, implements, or utensils or appurtenances, and, on the contrary, carelessly and negligently did furnish, keep, and use, in running and operating said railroad, at Carlyon, aforesaid, at the time aforesaid, a bad, insufficient, and unsafe railroad, and bad, insufficient, and unsafe switches, side tracks, turnouts, depot, railroad cars, locomotive engines, and other bad, insufficient, and unsafe, and danger- ous paraphernalia, implements, utensils, and appurtenances, and neglected to have and keep the same in a safe or good condition for use, and allowed and permitted the same to become and to be and remain in an unsafe and danger- ous condition, and so to remain, and, in so keeping, running, managing, and operating the same negligently and carelessly,    *    *    *    omitted the use or exercise of skill or of care or prudence."    The answer denies the allegations of negligence, and alleges that the death of plaintiff's intestate, on the 27th .of July, 1883, was "occasioned by mere casualty and unavoidable accident, resulting from and occasioned by a great storm and wind blowing a freight car, duly secured on the side track at Carlyon station, to and upon the main track of defendant's road at said station, immediately preceding the passage of the said train of cars which the said Lucius J. France, deceased, then an employé of the said defendant, was, with other employés of said defendant, engaged at work upon."

Argued before HARDIN, P. J., and FOLLETT, ADAMS, GREEN. and WARD, JJ.

Henry Purcell, for appellant.

T. P. Morehouse, for respondent.

HARDIN, P. J.    Facts and circumstances relating to the accident are found stated in the opinions delivered in Webster v. This De- fendant, 40 Hun, 161, affirmed 115 N. Y. 112, 21 N. E. 725, and in the opinion delivered when this case was before the general term on a former appeal, reported in 88 Hun, 318, 34 N. Y. Supp. 408. In the opinion last referred to, it was determined by the court that an error was committed on the trial, then under review, "in submit- ting to the jury the question of the defendant's negligence, based upon its not equipping its train with air brakes."    The learned coun- sel for the appellant contends that the verdict of the jury is unsup- ported by the evidence.    On the contrary, the respondent maintains that the evidence is entirely sufficient to sustain the verdict of the jury in finding that the brake on the freight car, left on the siding, was entirely inadequate, defective, and incapable of performing the office for which it was attached to the car; and, in support of her contention, the testimony of Martin Fahey is relied upon, who was a brakeman in the service of the defendant prior to the accident, and who testified that he had been engaged in running from Char- lotte to Suspension Bridge on what was called the "Charlotte Local," which ran from Lewiston to Charlotte.    The witness testified, viz.:

"I remember the time of the Carlyon disaster, in 1883.    I was in the service of that road at that time as freight train brakeman.    For a week prior to that accident, I was extra brakeman on a freight train running from Oswego to Charlotte, and from Charlotte to Suspension Bridge.    It was through and way freight.    Prior to the Carlyon disaster, I was on a different run about

four days before. * * * We got to Charlotte about noon. That was the local which let cars off at different places, and took them on. * * * I remember, a short time before the Carlyon disaster, leaving a car on that siding. I know where the Carlyon station is and siding. We left the car there the day before the disaster. When we left it there, we were going with our train from Lewiston to Charlotte. I had not noticed this car on its run up to Charlotte until they went to get it out. Then, when I went to cut it out, I noticed the dog that connects with the ratchet was loose. Every freight car has a brake upon it; sometimes two. That brake on a box car comes up about twenty inches or such a matter above the top of the car. In this case the top of the brake was on top of the car. The ratchet and dog was on the platform. That platform was about two feet below the top of the car at the end. * * * Where this bolt went through the hole was too big, or had been worn. When you went to twist this, the dog did not catch. The hole was too large in the wood. There was a bolt went down through the nut, and came up underneath, to hold the dog onto the platform. After the brake had been screwed up and set, this particular brake would not hold, unless you held it by your hand; and, when you would release your hand, it would fly around and loosen the brake again. * * * I set this brake. The dog wouldn't work. As soon as I stopped the car, I jumped down. I got down, and put a piece of wood under the wheel. In the meantime they had coupled the train on the main line. The block was not made for that purpose. It was one I happened to pick up there. It was a piece of scantling, probably an inch or two inches thick. This scantling was on one rail. I remember hearing about the Carlyon disaster the next day."

In further speaking of the brake on the car left on the siding, this witness says:

"There is a ratchet, and there is a dog, and the dog is supposed to go through a bolt laying down under that counter; and it was loose, the same as drawed away a little ways. It would catch, but it would still flop, and the car was blocked. I caught the car which was cut off from the engine."

The witness was then asked "to give what you claim took place when you got up there when you attempted to set that brake." The witness answered as follows:

"All I saw about that brake was with the dog; the bolt that went through the standard, or what they call the 'staff platform.' That is a foot and a half from the top of the car, or eighteen inches. That the screw that went through this dog was loose, or worked and gave it a play to go back a little ways, so that, when you set the brake, she wouldn't hold; connect with the dog. The brake staff runs through this ratchet, and the brake wheel on top. The brakeman sets the brake, and it goes down through, and that connects with the brake shoe. That is a lever; and down at the end of the brake lever and the brake rods they have a shoe, and that was loose. When I attempted to set it, I found that that was loose. I set it, and could hold it with my hand. The dog had no interference. The side track was on a level at Carlyon. Q. When you let go with your hand of the brake, what effect did that have? Did the brake then remain set tight? A. No; if I let it off swift; when I saw the dog wouldn't work, I let it off easy, and got down, and put a block under. Q. Was that brake in such a condition you couldn't set it? A. I could set it and hold it. Q. If you left it? A. Yes, sir; the brake was in that condition. The Court: He says this brake was in such a condition at the time he claims he set it, if he took his hands from the wheel, it wouldn't hold."

This witness was extensively cross-examined, and some evidence was given tending to corroborate him, and considerable evidence was given tending to contradict his statements, and also evidence was given by the defendant tending to indicate that he was not in the employ of the road on the occasion that he testifies leaving the car on the siding; and some evidence was given tending to impeach him,

and to indicate that he had been convicted once or twice for being intoxicated, and once for assault. It was for the jury to determine what credence should be given to Fahey as a witness.

In the course of the charge, the trial judge instructed the jury that the defendant claimed that the testimony of Fahey was not entitled to belief, and the trial judge added, viz.:

"If you, in this case, should find that Fahey in regard to some facts had testified falsely, you have a right to find as to others that he has testified truthfully. If the circumstances and the corroboration of the facts and all the surroundings make you believe he has testified truthfully in regard to certain facts, you have a right to so find."

And further on, in speaking of this witness in the course of the charge, the trial judge said:

"If you believe, in other words, that the circumstances surrounding this case corroborate Fahey, and you believe that Fahey speaks the truth with reference to the condition of this alleged defective brake and appliances upon this box car, it is not only your right, but your duty, to find a verdict in this case in favor of the plaintiff; while, on the other hand, as I have said, if you believe that Fahey was not there, and believe that these different witnesses who have testified that he was not there are truthful in what they say, and are corroborated in what they say by these different facts and circumstances that have been contended for and presented here to you by the defendant's learned counsel, then you must find a verdict for this defendant."

Thus, we see the jury were called upon to determine what faith and credit should be given to the witness Fahey. Chaffee v. Morss, 67 Barb. 252; Duffus v. Schwinger, 92 Hun, 70, 36 N. Y. Supp. 342.

Towards the close of the charge the judge pointedly put the question of fact to the jury in the following language:

"Did the defendant furnish a defective brake and appliances upon this box car? * * * If you find that it did not furnish a reasonably safe and suitable brake and appliances connected with it for this box car in question, and that it was defective, then your verdict will be for the plaintiff, or must be for the plaintiff."

In the course of the opinion delivered in Webster v. Railroad Co., 115 N. Y. 114, 21 N. E. 725, it was said:

"It was the duty of the defendant to so secure the freight car upon the side track that no wind which might be reasonably anticipated would move it upon the main track. Did it discharge that duty? That was the question for the jury. It gave evidence showing that, when the freight car was placed upon the side track, the brakes thereon were set, and that thus it was secured. The plaintiff gave evidence tending to show that if the brakes upon the car had been properly and thoroughly set, and the car thus properly secured, such a wind as there was prior to the collision could not have moved the car. * * * If the brakes were inadequate to secure such a car so that any wind which might be reasonably expected could not move it, then the jury might find that a car left standing for nearly two days ought, in the exercise of that high degree of care incumbent upon a railroad company for the protection of its passengers, to have been blocked or otherwise secured."

We think the suggestion of the learned counsel for the appellant that the defective brake was not the proximate cause of the accident cannot be successfully maintained. We have discovered no error in the course of the trial which requires us to disturb the verdict.

Judgment and orders affirmed, with costs. All concur.